IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL J. PARKERTON, JR.,          *

     Plaintiff,                    *

v.                                  *          Civil Action No. GLR-19-1403

PAUL BROOKS,                        *
JOHN DAVIS,
KELLAR COVINGTON, III, and          *
DIVISION OF CORRECTION,[1]
                                    *
     Defendants.

                  ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Paul Brooks, John Davis, Kellar Covington, III, and the Division of Correction's ("DOC") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6. (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion, which it construes in part as one for summary judgment.

## I.      BACKGROUND

Plaintiff Michael J. Parkerton, Jr. is a state prison inmate presently housed at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1, ECF No. 1).[2] In an unverified Complaint, Parkerton alleges that on March 18, 2019, while he

---

[1] The Clerk shall amend the docket to reflect the full and correct names of Defendants Kellar Covington, III and the Division of Correction.

[2] Citations to the Complaint refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

was incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, he was attacked by correctional officers Paul Brooks, John Davis, and other unidentified employees. (Id. at 2). Parkerton alleges that he suffered a black eye and required stitches. (Id.).

On March 22, 2019, MCTC's Warden filed a Serious Incident/Use of Force Report ("Incident Report") regarding the alleged attack. (Defs.' Mot. Dismiss Summ. J. ["Mot. Dismiss"] Ex. 3 ["Incident Report"], ECF No. 16-6). As the Senior Shift Supervisor, Shift Operations Captain at the time of the alleged attack, Kellar Covington signed the Incident Report, although he was not personally involved. (Mot. Dismiss Ex. 8 ["Covington Decl."] ¶ 3, ECF No. 16-8).

According to the report, on March 18, 2019, Brooks handcuffed Parkerton behind his back and escorted him to a different room. (Incident Report at 3). Brooks was waiting for Parkerton's property to be packed up for reassignment to another housing unit following a disciplinary infraction. (Id.). Brooks noticed that Parkerton had slipped his handcuffs in front of his body and directed Parkerton to go to the back wall so that his handcuffs could be repositioned behind his back. (Id.). As Brooks reached for Parkerton's arm, Parkerton pulled away. (Id.). Brooks instructed Parkerton not to pull away, but Parkerton continued to do so. (Id.). Parkerton then slipped his left hand out of the handcuffs and swung his right hand at Brooks, striking Brooks in the face with his right fist and the attached handcuffs. (Id.).

Brooks charged at Parkerton, wrapped his arms around Parkerton's shoulder and neck, and pulled Parkerton's head down to regain control. (Id.). Brooks unsuccessfully

attempted to take Parkerton to the ground. (Id.). Brooks pushed Parkerton against the wall as Davis arrived. (Id.). At that time, Parkerton hit Davis with the handcuff that was still attached to his right hand, cutting Davis' forehead. (Id.). Brooks and Davis eventually knocked Parkerton to the ground and handcuffed him. (Id.). Davis was taken to Meritus Medical Center, where he received six sutures to close his head wound. (Covington Decl. ¶ 4). Parkerton was taken to the dispensary for a mandatory evaluation. (Id.).

The nurse who evaluated Parkerton noted that he walked into the dispensary with a brisk steady gait, and his breathing was even and unlabored. (Incident Report at 19–20). He was alert and oriented, his speech was clear and appropriate, and he had full range of motion. (Id.). Parkerton had abrasions on his right shoulder and on the right side of his head, in addition to a bruise and a two-centimeter jagged laceration on his right eyebrow. (Id.). The nurse cleaned and bandaged Parkerton's laceration, using gauze to control the bleeding. (Id.). Following his examination, Parkerton was charged with violation of inmate rule #101 for assault or battery on staff and was placed in administrative segregation pending a formal hearing. (Id. at 16–18).

On March 19, 2019, the provider on call evaluated the laceration to Parkerton's right eyebrow. (Mot. Dismiss Ex. 4 ["Medical Records"] at 57–58, ECF No. 16-7). Parkerton consented to receiving two sutures. (Id. at 57). The wound was dressed, Parkerton received a tetanus shot, and facial x-rays were ordered. (Id. at 57–59). Parkerton also had an appointment for medication management because he was refusing to take his psychiatric medication, but the appointment was rescheduled because he was transferred to NBCI later that afternoon. (Id. at 50).

3

On March 20, 2019, nurses at NBCI reviewed Parkerton's medical records and scheduled a suicide risk assessment and wellness check. (Id. at 43–46). On March 26, 2019, Parkerton's sutures were removed and his facial x-ray revealed no evidence of an acute fracture, dislocation, or subluxation. (Id. at 37–38).

Following an internal investigation of the March 18, 2019 incident at MCTC, the Security Chief and Executive Deputy Director determined that Brooks and Davis responded in accordance with the Department of Public Safety and Correctional Services and DOC policies and procedures regarding use of force. (Covington Decl. ¶ 4; see also Incident Report at 5). Specifically, the use of force was deemed appropriate in order to gain control of a combative inmate who had used handcuffs as a weapon to cause bodily harm to staff members. (Covington Decl. ¶ 4).

On March 28, 2019, Parkerton was found guilty of inmate rule #101. (Mot. Dismiss Ex. 6 ["IID Report"] at 7, 14, ECF No. 16-9). As an alternative sanction, Parkerton's radio, compact disc, and television were confiscated and his telephone, commissary, and visitor privileges were suspended for sixty days. (Id.). Parkerton also received ninety days of segregation, and 180 "good conduct" credits were revoked. (Id.).

On April 1, 2019, an Application for Statement of Charges was filed against Parkerton in the District Court for Washington County, Maryland for First- and Second-Degree Assault and Reckless Endangerment against two DOC employees. (Id. at 7). The case was subsequently transferred to the Circuit Court for Washington County, Maryland and on October 17, 2019, Parkerton pleaded guilty to Second-Degree Assault of a DOC

employee. (Mot. Dismiss Ex. 10 ["Docket Sheet"] at 7, ECF No. 16-13.) Parkerton was sentenced to three years of incarceration. (Id.).

Parkerton's ARP Index shows that as of November 6, 2019, he has filed four ARPs since being transferred to NBCI, two of which relate to the claims raised in his Complaint. (Mot. Dismiss Ex. 12 ["ARP Index"], ECF No. 16-15). In ARP No. NBCI-0640-19, filed on April 3, 2019, Parkerton claimed that he was assaulted by MCTC staff on March 18, 2019. (Id). In ARP No. NBCI-0635-19, also filed on April 3, 2019, Parkerton claimed that he was placed in a cell at MCTC on March 18, 2019 with no clothing or bedding until he was transferred to NBCI the following day. (Id.). Both ARPs were dismissed because the incidents were already under investigation. (Id.). Parkerton also filed Inmate Grievance Office ("IGO") complaint No. 20190761 on May 24, 2019 as a grievance "appeal" from the disposition of ARP NBCI-0640-19. (Mot. Dismiss Ex. 16 ["Hassan Decl."], ECF No. 16-16). That grievance was administratively dismissed without prejudice because the complaint was pending investigation. (Id.).

On May 9, 2019, Parkerton filed this § 1983 action, alleging that he was attacked by Brooks and Davis and denied basic necessities, including a mattress and blanket, in violation of the Eighth Amendment of the United States Constitution. (Compl. at 2, ECF No. 1). Parkerton seeks monetary damages, a new TV and Xbox, an apology, and immediate release from custody. (Id. at 3).

Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on November 21, 2019. (ECF No. 16). Parkerton filed an Opposition on December 27, 2019.[3] (ECF No. 18). To date, Defendants have not filed a Reply.

## II.    DISCUSSION

As explained below, the Division of Corrections is not subject to suit under § 1983, and Parkerton has failed to make any factual allegations against Covington, who—in any event—is not subject to supervisory liability under § 1983. Accordingly, both are entitled to dismissal under Rule 12(b)(6). Parkerton's remaining claims against Brooks and Davis will be reviewed on summary judgment.

### A.    Motion to Dismiss

#### 1.    Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

---

[3] In his Opposition, Parkerton alleges for the first time that Brooks initiated the incident by pushing him because he refused to move to a different housing unit. (Decl. Opp'n Defs' Mot. Summ. J. ¶¶ 6–7, ECF No. 18). Parkerton also asserts that he removed his handcuffs to prevent himself from falling, that the officers began striking him when they saw that he was uncuffed, and that he struck the officers in self-defense. (Id. ¶¶ 8–16).

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2.   Analysis

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see Safar v.

Tingle, 859 F.3d 241, 245 (4th Cir. 2017). To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019).

As to the Division of Corrections, it is an arm of the State and, as such, is not a "person" within the meaning of § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."); see also Md. Code Ann., State Gov't § 8–201(b)(16) (West 2020) (identifying the Maryland Department of Public Safety and Correctional Services as a department of the Maryland state government); Md. Code Ann., Corr. Servs. § 2–201(1) (West 2020) (identifying the Maryland Division of Corrections as a unit within the Maryland Department of Public Safety and Correctional Services). The Division of Corrections is not a person within the meaning of § 1983 and is not subject to suit under that statute.

Alternatively, the Division of Corrections is immune from suit in federal court under the Eleventh Amendment to the United States Constitution, absent specific exceptions not applicable here. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Accordingly, the claims against the Division of Corrections are dismissed with prejudice.

As to Covington, Parkerton does not attribute any specific action or inaction on his part that resulted in a constitutional violation. Covington is merely named in the case caption. On that basis alone, Covington is entitled to dismissal. See Abell v. Smith, No. WDQ-13-1161, 2014 WL 2180174, at *2 (D.Md. May 22, 2014) (dismissing a defendant

8

who was named in the case caption but for whom the plaintiff provided "no information to support a claim against him"). Moreover, a defendant may not be held liable under § 1983 unless the defendant "acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). Again, Parkerton has not alleged any facts against Covington—let alone facts establishing his personal participation in the deprivation of Parkerton's constitutional rights.

Lastly, to the extent Parkerton intended to sue Covington in his capacity as Brooks and Davis' supervisor, his claim fails. The doctrine of respondeat superior does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (holding there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Again, Parkerton has made no factual allegations against Covington and, as such, has failed to establish supervisory liability premised on Covington's knowledge of his subordinates' misconduct or Covington's inadequate response to the alleged misconduct. Accordingly, the claims against Covington are dismissed without prejudice.

**B.**   **Motion for Summary Judgment**

**1.**   **Conversion**

Defendants' Motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-

2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller,

Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two

requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice

and reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns,

Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the

movant expressly captions its motion "in the alternative" as one for summary judgment

and submits matters outside the pleadings for the court's consideration, the parties are

deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey,

381 F.Supp.2d 458, 463 (D.Md. 2005). The Court "does not have an obligation to notify

parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th

Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an

opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus.,

Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citing Gay v. Wall, 761 F.2d 175, 178 (4th Cir.

1985). Yet, "the party opposing summary judgment 'cannot complain that summary

judgment was granted without discovery unless that party had made an attempt to oppose

the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty

Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs.

Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise the issue that more

discovery is needed, the non-movant must typically file an affidavit or declaration,

explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56.

Here, the Court concludes that both requirements for conversion are satisfied. Parkerton was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 463. In addition, the Clerk informed Parkerton about the Motion and the need to file an opposition. (See Nov. 27, 2019 Letter, ECF No. 17). Parkerton filed an Opposition but did not include a request for more time to conduct further discovery. Because the Court will consider documents outside of Parkerton's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

### 2.      Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in

evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Following a properly supported motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (internal quotation marks omitted) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). A "material" fact is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**3.      Analysis**

**a.      Conditions of Imprisonment**

Parkerton claims that he was not provided a mattress and blankets in administrative
segregation following the incident on March 18, 2019 in violation of the Eighth
Amendment. The Eighth Amendment proscribes "unnecessary and wanton infliction of
pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia,
428 U.S. 153, 173 (1976); see U.S. Const, amend. VIII; Estelle v. Gamble, 429 U.S. 97,
102 (1976); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein,
825 F.3d 206, 218 (4th Cir. 2016). This prohibition "protects inmates from inhumane
treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th
Cir. 1996).

"[T]o establish the imposition of cruel and unusual punishment, a prisoner must
prove two elements—that the deprivation of [a] basic human need was objectively
sufficiently serious, and that subjectively the officials acted with a sufficiently culpable
state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations and
quotation marks omitted) (emphasis in original) (quoting Strickler v. Waters, 989 F.2d
1375, 1379 (4th Cir. 1993)). "These requirements spring from the text of the amendment
itself; absent intentionality, a condition imposed on an inmate cannot properly be called
'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"
Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate

to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Parkerton has failed to establish either element. Defendants' alleged failure to provide a mattress and blanket is not a sufficiently serious deprivation of basic needs that would give rise to an Eighth Amendment violation. See, e.g., Crowe v. Leeke, 540 F.2d 740, 741–42 (4th Cir. 1976) (rejecting an Eighth Amendment claim premised on allegations that three inmates were forced to sleep in an overcrowded cell with only two beds, forcing one inmate to sleep on the floor). While Parkerton's sleeping arrangements may have been less than ideal, he only endured them for a night, and his Complaint does not allege that he was "subjected to mental abuse or corporal punishment; was deprived of the basic implements of personal hygiene; was denied medical care or an opportunity to exercise; nor does he allege that his cell failed to meet certain reasonable sanitary standards." See id. at 742.

Even if Parkerton established the first element, he fails to show that, subjectively, Defendants acted with a sufficiently culpable state of mind in imposing such conditions as punishment. Moreover, Parkerton cannot withstand summary judgment because he has failed to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. Rather, the record reflects that he was placed in MCTC

administrative segregation for only one night and was transferred to NBCI the following day, where he promptly received a suicide risk assessment and wellness check.

At bottom, Parkerton has failed to establish the essential elements for cruel and unusual punishment. Accordingly, there is no genuine dispute as to any material fact, and Defendants Brooks and Davis are entitled to summary judgment on this claim.

### b.    Excessive Force

Parkerton also asserts that he was "attacked" by Brooks, Davis, and other unidentified officers. (Compl. at 2). Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6–7 (1992). This Court must look at the need for application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury, alone, is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The extent of injury incurred is one factor in determining whether or not the force was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 37–38.

Here, the record reflects that Brooks and Davis applied force in an effort to secure Parkerton after he slipped one hand out of his handcuffs and assaulted the officers. Photographs included in the Incident Report confirm that Brooks and Davis sustained

16

injuries consistent with their account of the incident. Because Parkerton repeatedly swung at the officers with a closed fist and loose handcuffs, they acted reasonably in pushing Parkerton against the wall and taking him to the ground. The undisputed evidence does not support Parkerton's assertions—offered for the first time in his Opposition—that he removed his handcuffs to protect himself from falling, or that he struck the officers in self-defense. Moreover, the Court declines to consider these alternative facts, because they were not alleged in Parkerton's Complaint.[4] Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) (explaining that a plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). Thus, the Court concludes that the force used was appropriate in order to gain control of a combative inmate who used handcuffs as a weapon to cause bodily harm to custody staff.

Parkerton has failed to establish that the force used against him was excessive. Accordingly, there is no genuine dispute as to any material fact, and Defendants Brooks and Davis are entitled to summary judgment on this claim.

---

[4] Even if Parkerton alleged self-defense in his Complaint, that defense is undermined by the fact that Parkerton pled guilty to Second-Degree Assault of a DOC employee—a criminal charge stemming from the March 18, 2019 incident.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 16), which is construed, in part, as one for summary judgment. A separate Order follows.

Entered this 14th day of August, 2020.

_____/s/_____

George L. Russell, III
United States District Judge
